Michele Anderson-West (9249)
**ANDERSON-WEST LAW**
885 West Baxter Drive
South Jordan, Utah 84095
801.830.1958
michele@andersonwestlaw.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| **JAMES LOGGINS,**  Plaintiff,  v.  **DELTA AIR LINES, INC.**  Defendant. | **COMPLAINT AND JURY DEMAND**  Case No.  District Judge: Magistrate Judge: |

Plaintiff James E. Loggins ("Mr. Loggins" or "Plaintiff"), through his undersigned counsel, complains against Defendant Delta Air Lines, Inc. ("Delta" or "Defendant") and for causes of action, alleges as follows.

## STATEMENT OF THE CASE

Mr. Loggins started working for Delta in November 2016. He chose to work at Delta because it promised that it embraced "diverse people, thinking and styles." Further, Mr. Loggins chose to work at Delta because it promised to "recruit, hire, train and promote individuals based on job qualifications and performance, not on personal characteristics or traits."

Mr. Loggins is African American and moved from Texas to Salt Lake City, Utah to work for Delta. Between November 2016 and August 2023, Mr. Loggins excelled at his positions, was promoted, and received pay increases.

1

In July 2023, Delta Human Resources ("HR") met with Mr. Loggins and interrogated him. HR asked Mr. Loggins why he was spreading rumors. Mr. Loggins asked HR what it meant by spreading rumors. HR did not give him an answer. HR told Mr. Loggins that it was not his business who people slept with. Mr. Loggins asked HR what that meant, and HR again did not give him an answer. HR asked Mr. Loggins to turn over his personal cell phone so HR could look at Mr. Loggins' personal text messages. Mr. Loggins did as he was told. HR asked Mr. Loggins if he was friends with one of his managers, Heather, on social media. Mr. Loggins told HR that he did not know. HR asked him to pull up his personal Facebook page and told him to search for Heather's name. Heather was not listed among Mr. Loggins' Facebook friends. Without saying more, HR demanded that Mr. Loggins write a statement for "his side of the story" without ever telling Mr. Loggins anything more about why he was being asked to write a statement. Mr. Loggins complied and wrote a statement saying something to the effect that he did not spread rumors. HR told Mr. Loggins that his "lying" would not protect his job. Mr. Loggins was not lying. Notwithstanding, HR suspended Mr. Loggins without pay.

Mr. Baird was called to walk Mr. Loggins out of the office and because Mr. Loggins is African American, said "you know the drill." Mr. Loggins told Mr. Baird that he did not "know the drill." Mr. Baird then acted surprised and said, "you have been suspended before right?" Mr. Loggins responded that he had never been suspended or fired from any position.

Mr. Loggins contacted his immediate supervisor, Meng Aguirre, and asked her what was going on with his suspension. Ms. Aguirre told Mr. Loggins that she had no idea HR suspended him.

Delta terminated Mr. Loggins on August 22, 2023.

The Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VI") makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.

Delta treated Mr. Loggins like sexual predator because he is African American. Delta made false assumptions about Mr. Loggins because he is African American. Delta did not afford Mr. Loggins the due process he deserved, and which Delta gave to its Caucasian employees. Defendant treated Mr. Loggins less favorably than his Caucasian co-workers and engaged in unlawful conduct that prevented Mr. Loggins from enjoying the same compensation, terms, conditions and privileges of employment as his Caucasian counterparts. This lawsuit is brought to redress Delta's unlawful and discriminatory conduct.

## PARTIES

1. Plaintiff James E. Loggins is an individual and at all times relevant herein, resided in Salt Lake County, Utah.

2. Defendant Delta Air Lines, Inc., is a foreign business corporation organized under the laws of the state of Delaware with its principal corporate offices located in Atlanta, Georgia and which does business in Salt Lake City, Utah.

3. At all times relevant herein, Delta acted by and through its agents.

4. At all times relevant herein, Mr. Loggins was Delta's employee.

5. At all times relevant herein, Delta employed over 15 full-time employees in Salt Lake County, Utah.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction under 28 U.S.C. §1331.

7. Supplemental jurisdiction for Plaintiff's state law claims is proper in this Court pursuant to 28 U.S.C. §1367.

8. Venue is proper within this District pursuant to 28 U.S.C. § 1346 and 28 U.S.C. §1402(b) because all acts referred to herein occurred within Salt Lake County, Utah.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff filed his Charge of Discrimination on December 16, 2024. (Exhibit 1).

10. The Equal Employment Opportunity Commission issued a Notice of Right to Sue dated July 22, 2025. (Exhibit 2).

11. This complaint is timely filed within 90 days of Mr. Loggins' receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

12. The preceding paragraphs, including the Statement of the Case, are incorporated herein by reference.

13. Delta hired Mr. Loggins in November 2016.

14. Mr. Loggins is African American.

15. Mr. Loggins worked for Delta as one two African American males out of approximately 12 employees.

16. The other African American male had over 20 years of experience with Delta.

17. Mr. Loggins was well qualified for the positions he held with Delta.

18. Mr. Loggins' starting hourly wage was $13.00 per hour and his final pay rate was $28.16 hour.

19. From time to time, Mr. Loggins was required to work more than 40 hours per week on behalf of Delta, for which he earned $42.24 per hour.

20. When he was hired, Delta gave Mr. Loggins its Code of Ethics.

21. Therein, among other things, it stated "[w]hen an employee fails to follow Delta's policies or meet performance requirements, any decision to take disciplinary action or terminate employment is made only after a rigorous process of review and usually only after an employee has

4

received prior coaching.

22. On Saturday, June 29, 2024, Mr. Loggins went to start his shift and was met by David Baird, Directing Manager of Department 120.

23. As they were walking, Mr. Baird told Mr. Loggins that I "said something" or "did something" that "made someone uncomfortable."

24. Mr. Loggins asked Mr. Baird what it was and Mr. Baird told Mr. Loggins that he could not tell him.

25. Mr. Baird asked Mr. Loggins if he could think of anything and Mr. Loggins told him "no."

26. Mr. Baird and Mr. Loggins walked into Mr. Withers' office. Mr. Withers closed the door and said "I bet you are wondering why you are here."

27. Mr. Loggins said "yes I am."

28. Mr. Withers said that Mr. Loggins did or said something that made someone uncomfortable.

29. Mr. Loggins asked him what it was.

30. Mr. Withers said that he could not tell Mr. Loggins and asked Mr. Loggins if he could remember anything. Mr. Loggins told him "no."

31. Without elaborating or explaining, the allegations, Mr. Withers asked Mr. Loggins to write a statement.

32. Mr. Loggins asked Mr. Withers how he could write a statement without knowing what was happening.

33. Mr. Withers insisted that Mr. Loggins write a statement, so he wrote something to the extent that he did "not know what was going on."

34. Delta did not coach Mr. Loggins prior to his suspension and did not even discuss with Mr. Loggins the reason(s) he was being suspended.

35. Delta did not engage in any "rigorous process of review" before suspending Mr. Loggins.

36. Delta coached Caucasian employees, but did not coach Mr. Loggins, an African American.

37. Delta engaged in rigorous processes of review of Caucasian employee performance, but did not afford Mr. Loggins the same terms and conditions of employment.

38. Mr. Baird, after the meeting, walked Mr. Loggins toward the office exit and said "You know the drill."

39. Mr. Loggins said "No. I do not know the drill."

40. Mr. Baird said, "Well, you have been suspended before, right?"

41. Mr. Loggins said "no" he had never been suspended or terminated before.

42. Mr. Baird, like others at Delta, made false and derogatory assumptions about Mr. Loggins based on his race.

43. Mr. Baird, like others at Delta, treated Mr. Loggins less favorably than the Caucasian employees.

44. Delta fired Mr. Loggins on August 22, 2024.

45. Mr. Loggins appealed the termination on November 7, 2024.

46. The telephonic appeal lasted less than 15 minutes, and Delta thereafter denied Mr. Loggins' appeal.

47. Mr. Loggins filed a Charge of Discrimination with the Utah Labor Commission Antidiscrimination and Labor Division ("UALD") on December 16, 2024.

6

48. Mr. Loggins received a Notice of Right to Sue from the EEOC on July 22, 2025 and commenced this lawsuit within 90 days of his receipt thereof.

49. Mr. Loggins seeks money damages for Delta's unlawful conduct, reimbursement for costs and attorney's fees in bringing this lawsuit, and seeks reinstatement to his former position at a location other than Salt Lake City, Utah.

## FIRST CAUSE OF ACTION
## RACE AND/OR COLOR DISCRIMINATION

50. The preceding paragraphs are incorporated herein by reference.

51. Delta hired Mr. Loggins in November 2016.

52. Mr. Loggins is African American.

53. Mr. Loggins worked for Delta as one two African American males out of approximately 12 employees.

54. The other African American male had over 20 years of experience with Delta.

55. Mr. Loggins was well qualified for the positions he held with Delta.

56. Mr. Loggins' starting hourly wage was $13.00 per hour and his final pay rate was $28.16 hour.

57. From time to time, Mr. Loggins was required to work more than 40 hours per week on behalf of Delta, for which he earned $42.24 per hour.

58. When he was hired, Delta gave Mr. Loggins its Code of Ethics.

59. Therein, among other things, Delta's Code of Ethics stated "[w]hen an employee fails to follow Delta's policies or meet performance requirements, any decision to take disciplinary action or terminate employment is made only after a rigorous process of review and usually only after an employee has received prior coaching.

60. Delta did not coach Mr. Loggins prior to his termination and did not even tell Mr.

Loggins the reason(s) for his termination.

61. Delta did not engage in any "rigorous process of review" before terminating Mr. Loggins.

62. Delta gave coaching to Caucasian employees, but not to Mr. Loggins, an African American.

63. Delta engaged in rigorous processes of review of Caucasian employee performance but did not afford Mr. Loggins the same terms and conditions of employment.

64. Delta fired Mr. Loggins because of his race, on August 22, 2024.

65. As a direct result of Defendants' discriminatory conduct, Mr. Loggins suffered damages including loss of pay and benefits and other employment related compensation lost because of Defendant's unlawful discrimination.

66. Mr. Loggins is entitled to recover compensatory damages in an amount to be proven at trial, including attorney's fees and costs incurred in bringing this action.

67. Defendant's discriminatory conduct was willful and malicious and manifested a knowing and reckless indifference toward, and in disregard of Mr. Loggins' interests and protected rights.

68. As a result of Defendant's willful malicious conduct or knowing and reckless indifference toward Mr. Loggins' legally protected rights, Mr. Loggins is entitled to an award of punitive damages in an amount to be proven at trial, but not less than $300,000.

## REQUEST FOR JURY TRIAL

Mr. Loggins requests trial by jury on issues so triable to jury pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. For judgment in favor of Plaintiff and against Defendant;

b. For an award of compensatory damages, both special and general damages suffered, of not less than $300,000;

c. For pecuniary and non-pecuniary damages;

d. For punitive damages, of not less than $300,000;

e. For reasonable attorneys' fees and costs, including expert witnesses;

f. For an award of pre- and post-judgment interest; and

g. For other such relief that is equitable and just.

Dated this 24th day of September 2025.

ANDERSON-WEST LAW

/s/ Michele Anderson-West
Michele Anderson-West
*Attorney for Plaintiff*